**Opinion issued January 17, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

NO. 01-12-00886-CR
NO. 01-12-00887-CR

———————————

**TRISTAN ROGERS LEWIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 67507**

---

## MEMORANDUM OPINION

Appellant Tristan Rogers Lewis has been charged with two counts of injury to a child in connection with the death of his two-year-old daughter, K.L. *See* TEX. PENAL CODE ANN. § 22.04 (West 2012). His pretrial bond was set at $175,000.

He has filed two motions to reduce bail, both of which have been denied by the trial court. Lewis appeals from the order denying his second motion. *See* TEX. R. APP. P. 31.

We affirm.

**Factual and Procedural Background**

Lewis was arrested in April 2012 and charged with two counts of injury to a child. The State alleged that on or about October 3, 2011, Lewis "did then and there intentionally or knowingly, cause serious bodily injury to K.L., a child younger than fourteen (14) years of age" by striking or applying blunt force trauma to her abdomen and "by failing to provide medical care" for her when he had the duty to do so. The case was assigned to the 23rd District Court, and bail was set at $175,000.

On July 19, 2012, Lewis filed his first "motion to reduce bond." In that motion, he claimed that the bail required by the trial court was excessive and requested that it be reduced to an amount "reasonable considering the charge and his circumstances." He claimed that he had been unable to raise the necessary funds to obtain a bond and that he had substantial ties to the community. He promised to appear in any court at any time in reference to the case against him. After a hearing on the same day, the trial court orally denied that motion.

Over two weeks later, on August 6, 2012, Lewis filed his "second motion to reduce bond." In that motion, Lewis raised all of the arguments raised in his first motion, and he further claimed that he was not a flight risk and did not have a passport. Despite a charge of retaliation pending against him in another case, he argued that he was not a threat to the community. In support of this argument, he contended that the complaining party in the retaliation case continued to correspond with him, inviting him to her residence and asking him to spend time with her and her children. A copy of a letter from that complaining party to Lewis was attached to the motion, along with a copy of a letter to him written by one of his children. Lewis also claimed that he sought to return to work with his uncle so he could pay for his defense in the present case and the retaliation case.

On August 10, 2012, the trial court held a hearing on Lewis's second motion. Lewis testified at the hearing that he was born in Brazoria County and had lived there all his life. He testified that he does not have a passport and he does not travel outside of Brazoria County for work. He had 11 children prior to the death of his two-year-old. He testified that he loves his children and would not harm them. Lewis also stated at the hearing that he had not injured his deceased daughter, K.L.

With respect to his work history, Lewis testified that prior to being incarcerated he worked for his uncle, who owns his own business, cleaning up

3

foreclosed homes. He testified that he earned $12 to $13 an hour and was working "maybe around ten" hours per week. Lewis testified that he does not have any money saved and that he had tried unsuccessfully to raise the necessary funds to obtain a bond. However, he testified that if he were able to post a bond, his uncle would allow him move into a garage apartment on his property, and he would continue working for his uncle. He testified that he would only be going to work and coming home, so "I won't be around anybody." He testified that alternatively, he could live with his mother. He testified that no children were present at either location.

Lewis also acknowledged that he has been separately charged with retaliation against a witness to the events forming the basis of the charges against him for causing injury to a child. Several letters written by the complainant in that separate case were offered into evidence by Lewis. In the letters, among other things, the complainant wrote that it was "good to see him" in court, she asked him to ask his mother to bring their children to see him, and she wrote: "when you get out come here." Lewis testified that he went to "child support court" with the complainant after the charges in both cases were filed against him, that he informed the judge of that court about the charges, and that he was granted visitation rights with one of his children with the complainant at that hearing.

Lewis testified that for the past year he had been on felony probation for "possession." He also testified that he had previously spent six months in state jail for "possession" after violating the conditions of probation in another case. He was convicted of "assault family violence" in 2010 and spent thirty days in jail. He testified that the victim in that case was charged with aggravated assault with a deadly weapon based upon the same incident, and was convicted. Lewis also testified that he was charged with another assault in 2011, involving the same person, and it was reduced to a Class C misdemeanor.

Lewis's mother, Laura Lewis, also testified at the hearing. She testified that she had saved $3,000 to be used towards the bond. She testified that she had asked others to contribute but was not able to come up with more than $3,000. She also testified that if Lewis was able to make his bond, he was welcome to live in her home.

After the testimony of the two witnesses, Lewis's counsel argued that bail should be reduced because the purpose of bail is to secure the defendant's appearance at trial, and Lewis was not a flight risk. He also argued that Lewis loves his children and would not harm them, and he wants the chance to work to earn money for his defense and child support. Counsel argued that Lewis is not a danger to the community, and he is amenable to accepting any conditions the court places on him.

The State argued that bail should not be reduced, because although Lewis had letters from the complainant in the retaliation case, there was no indication that the alleged retaliation had not occurred. The State argued in the present case, Lewis was charged with causing the death of his two-year-old child, and that lowering his bail could pose a threat to the safety of the community, particularly his other children.

After the hearing, the trial court orally denied the second motion to reduce bail. On November 14, 2012, the trial court signed a written order denying the motion. Lewis appeals the trial court's order.

**Analysis**

The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII; *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S. Ct. 479, 484 (1971) (applying Eighth Amendment prohibition of excessive bail to the States). Likewise, the Bill of Rights contained within the Texas Constitution provides that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." TEX.

6

CONST. art. I, § 11. The Texas Bill of Rights further specifies that "Excessive bail shall not be required . . . ." *Id.*, art. I, § 13.

The standard for reviewing whether excessive bail has been set is whether the trial court abused its discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Cooley v. State*, 232 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.). In the exercise of its discretion, a trial court should consider the following factors in setting a defendant's bail before trial:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005); *see Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991); *Montalvo*, 315 S.W.3d at 592. A defendant carries the burden of proof to establish that bail is excessive. *Ex parte Rubac*, 611 S.W.2d at 849; *In re Hulin*, 31 S.W.3d 754, 759 (Tex. App.—Houston

[1st Dist.] 2000, no pet.). In reviewing a trial court's ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court's ruling is at least within the zone of reasonable disagreement. *Cooley*, 232 S.W.3d at 234; *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (*citing Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)). We acknowledge, however, that an abuse-of-discretion review in this context requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. *Cooley*, 232 S.W.3d at 234. The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made. *Id.*

The primary purpose for setting bail is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should not be set so high as to be an instrument of oppression. *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); *Montalvo*, 315 S.W.3d at 596. Courts should also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions and aggravating factors involved

8

in the offense.  *See Ex parte Rubac*, 611 S.W.2d at 849; *Montalvo*, 315 S.W.3d at 596.

## I.     Sufficiency of bail

Because Lewis is complaining that bail of $175,000 is excessive, and as there is no indication in the record that the State asked the trial court to set a higher bail amount, there is no dispute that the bail set by the trial court is sufficiently high to give reasonable assurance that Lewis would comply with the undertaking of appearing in court as required in the future.

## II.     Nature and circumstances of the offense

Lewis has been charged with two first-degree felony counts of injury to a child in connection with the death of his two-year-old daughter.  *See* TEX. PENAL CODE ANN. § 22.04(e).  Our consideration of the nature and circumstances of the offense requires that we take note of the range of punishment permitted by law in the event of a conviction. *See, e.g., Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980); *Ex parte Reyes*, 4 S.W.3d 353, 355 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  In this case, the potential unenhanced punishment for injury to a child ranges from 5 to 99 years or life in prison.  TEX. PENAL CODE ANN. § 12.32 (West 2011).  Bail in excess of $175,000 has been approved for other first-degree felony offenses.  *See, e.g.*, *O'Brien v. State*, No. 01-12-00176-CR, 2012 WL 2922545 (Tex. App.—Houston [1st Dist.] July 5, 2012, no pet.) (no abuse of

9

discretion in refusal to reduce bail set at $750,000 for first-degree felony charge of theft of property valued at over $200,000, TEX. PENAL CODE ANN. § 31.03(e)(7)); *Ex parte Moore*, No. 03-12-00259-CR, 2012 WL 2078257 (Tex. App.—Austin June 8, 2012, no pet.) (no abuse of discretion in refusal to reduce bail set at $450,000 for first-degree felony charge of continuous sexual abuse of a child, TEX. PENAL CODE ANN. § 21.02(h)).

Other than the allegations contained in the indictment, which alleges that the child's injuries were caused "by applying blunt force trauma to the abdomen" of the child, the appellate record includes no evidence regarding the nature and circumstances of the offense. However, Lewis apparently denies the charges. Asked at the hearing whether he had injured the child in question, he responded, "No."

## III. Future safety of complainants and the community

The complainant in the charges of injury to a child, K.L., is dead; thus there is no issue of her future safety. The State suggested that Lewis had "an extensive amount of CPS history," and Lewis's counsel acknowledged that his rights had been terminated with respect to one of his daughters. The State thus argued that Lewis should not be permitted access to his other young children while charged with causing the death of a two-year-old, calling the situation a "recipe for disaster."

10

Additionally, one of the main subjects of the hearing on Lewis's motion was the safety of the State's witnesses. The record reflects that a separate case is pending against Lewis for retaliation against one such witness, the mother of the complainant child. Lewis testified at the hearing that this mother has expressed a desire to see him and for her children to see him, and several of her letters were admitted into evidence. In response, the State argued that nothing in the letters contradicted the charge of retaliation. Moreover, counsel for the prosecution also expressed concern for the safety of all of the State's witnesses, arguing: "I'm very limited in what I can do with this case as it sits right now, Judge, because calling one of the witnesses or calling any witnesses that are potentially threatened by Mr. Lewis puts a target on them and I'm not willing to do that, nor am I willing to transfer into the discovery of evidence of the retaliation case that's pending on him."

The trial court was persuaded by the State's arguments in this regard. The judge orally stated at the conclusion of the hearing that she was denying the request to reduce bail "in view of the safety of the community." The trial court must consider future safety of the complainants and community when determining what bail is appropriate, and the court may impose reasonable conditions upon setting bail for a pre-trial accused that is related to the safety of the complainant and of the community. *See* TEX. CODE CRIM. PROC. ANN. arts. 17.40(a) &

11

56.02(a)(2) (West Supp. 2012); *Ex parte Anderer*, 61 S.W.3d 398, 405–06 (Tex. Crim. App. 2001). The trial court's statement indicates that the trial court determined, based upon all of the evidence available to it, that bail of $175,000 was necessary to protect the safety of the community.

## IV. Ability to make bail

The Code of Criminal Procedure requires the trial court to consider the defendant's ability to make bail. TEX. CODE CRIM. PROC. ANN. art. 17.15(4). Lewis testified that he does not have the resources available to post a bond in the amount of $175,000. He testified that he does not have savings and that he was unable to raise the funds from his job to post the bond.

At the hearing on the first motion to reduce bail, Lewis testified that he had not discussed the issue with any bondsman. No further evidence was presented at the hearing on the second motion about any discussions with bondsmen or the maximum amount of bail that Lewis believed he could satisfy. Although Lewis testified that he has a car, no evidence was presented about its value or whether any attempt had been made to pledge it as collateral, and no evidence was presented regarding whether Lewis owns any other valuable property. Lewis's attorney did not argue that his bail should be reduced to a specific amount that he could satisfy. All of these factors suggest Lewis has not made a necessary demonstration of his inability to make bail. *See Milner v. State*, 263 S.W.3d 146,

12

149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted.").

There also was incomplete evidence presented regarding whether there were other family members available to request help from and whether Lewis had done so. *Id.* Lewis's mother testified that she had saved about $3,000 to help with the bond, and she had "made additional inquiries" of unspecified persons for help with the bond. There was no testimony from either Lewis or his mother to establish that all possible sources of family assistance had been exhausted. And in light of Lewis's arguments that the complainant's mother wanted him to be released so that he could be with her children, there was no testimony about whether she or any of the other mothers of Lewis's children had any ability to assist.

The Court of Criminal Appeals has emphasized that ability or inability to make bail does not, alone, control in determining the amount. *See Ex parte Rodriguez*, 595 S.W.2d at 550; *Ex parte Bufkin*, 553 S.W.2d at 118. The unrebutted evidence of Lewis's inability to make bail of $175,000 is a factor which generally favors reducing his bail, but that factor did not require the trial court to set bail at an amount that Lewis could satisfy, particularly when no evidence was presented about what amount of bail could be satisfied by him.

## V. Whether bail is being used as an instrument of oppression

Although Lewis argued in his motion that bail was "excessive," he presented no argument or evidence that bail is being used as an instrument of oppression in this case. Our independent review of the record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Lewis from posting bail.

## VI. Other factors

Other factors to be considered in determining whether bail is excessive include the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions and aggravating factors involved in the offense. *See Montalvo*, 315 S.W.3d at 596. On balance, these factors suggest that a high bond is justified in this case. Although Lewis has lived in Brazoria County his entire life, and he appears to have been working in the area, albeit part-time, he also testified that he had previously violated his probation conditions and spent six months in state jail as a result. Further, he testified that he is currently on felony probation in a subsequent case, and that he had been for a year. He also testified that he was convicted of "assault family violence" in 2010, and he was charged with another assault in 2011, the same year in which the incidents forming the basis of the charges pending against him in the current case occurred. The trial

court could have reasonably concluded based upon these considerations that Lewis's history justifies a high bail.

*    *    *

In light of the foregoing analysis, we conclude that the trial court did not abuse its discretion in setting bail at $175,000 for the charges against Lewis of the first-degree felony offense of injury to a child. That amount is not clearly excessive in light of the seriousness of the offenses alleged, which resulted in the death of Lewis's two-year-old daughter. Lewis did establish some factors that could justify a lower amount of bail, such as the evidence of his limited funds available to post a bond and his ties to the community. However, still other factors support a higher amount of bail, such as evidence suggesting that he has previously violated conditions of probation, and the fact that he has been charged with retaliation against a witness.

It is not our role to simply substitute our judgment for that of the trial court. Because we conclude that the trial court's ruling is within the zone of reasonable disagreement about the proper amount of bail in this circumstance, we will not disturb the trial court's ruling.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).