

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00223-CR

EX PARTE CATLIN WAYNE
BRISCOE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 182,663-C

----------

## MEMORANDUM OPINION[1]

----------

Applicant Catlin Wayne Briscoe appeals from the trial court's denial of his

pretrial application for writ of habeas corpus seeking a bail reduction.[2]  Because

---

[1]*See* Tex. R. App. P. 47.4.

[2]Because this is an appeal from the denial of an application for habeas corpus relief and not an appeal from an order setting bail or from the denial of a pretrial motion for bail reduction, we have jurisdiction over this appeal.  *See Ragston v. State*, 424 SW.3d 49, 50, 52 (Tex. Crim. App. 2014); *Vasquez v. State*, Nos. 03-13-00717-CR, 03-13-00718-CR, 2014 WL 3732962, at *1 n.2 (Tex. App.—Austin July 25, 2014, no pet.) (mem. op., not designated for publication).

we conclude that the trial court abused its discretion by failing to reduce the bail amount based on the proffered evidence, we reverse the trial court's order and remand to that court to set a reasonable bail.

## I.  BACKGROUND

On May 18, 2015, a magistrate determined that there was probable cause to issue an arrest warrant for Briscoe based on an affidavit sworn to by Betty J. Dean, a peace officer of the City of Wichita Falls Police Department.  *See* Tex. Code Crim. Proc. Ann. art. 15.03(a) (West 2015).  In the affidavit, Dean stated that she had probable cause to believe that on August 20, 2014, Briscoe committed the offense of injury to a child.  *See* Tex. Penal Code Ann. § 22.04 (West Supp. 2014).  Dean further attested that the child, who was one year old and in Briscoe's sole care at the time, suffered injuries indicative of blunt-force trauma:  "a skull fracture to the left back side of her head, massive brain swelling, [and] advanced healing fractures on the right forearm."  Doctors informed Dean that the child's lapse into unconsciousness would have been "instantaneous[]" after the injuries, which contradicted Briscoe's prior statement to the police that the child inexplicably became unconscious after he gave her a bath.  The child died the next day.

The autopsy report showed that the child had multiple traumatic injuries to her head and both ocular globes.  The report also noted that she had healing fractures of her right radius and ulna with scattered bruising on her body.  The medical examiners' critical case review concluded that the child's cause of death

2

was "blunt force trauma of head" and that the manner of death was homicide. *See* Tex. Code Crim. Proc. Ann. art. 49.25, §§ 6, 9 (West Supp. 2014).

After Briscoe's arrest, bail was set at $1,000,000. *See id.* art. 17.21 (West 2015). Briscoe filed an application for writ of habeas corpus and argued that the bail was unlawfully excessive. *See id.* art. 11.24 (West 2015). Briscoe requested that "bail in a reasonable amount" be set.

At the ensuring hearing, Briscoe testified that—except for the years he spent at college in Austin and one year at a law school in Houston—he has lived in Wichita Falls for over twenty-five years. His parents have owned and operated a day-care facility in Wichita Falls for over twenty-five years, and much of his extended family lives in Wichita Falls. Although Briscoe was unemployed for approximately one year before his arrest, he had an oilfield job waiting for him in Wichita Falls were he to be released on bail. Briscoe testified that he could not pay the ten to fifteen percent bail bond—$100,000 to $150,000—required by the sureties he had contacted. *See id.* arts. 17.01–.02 (West 2015). Briscoe's mother also was unable to pay the amount required by the sureties on the $1,000,000 bail amount. Briscoe stated that he was convicted of misdemeanor driving while intoxicated on April 15, 2014.[3] Briscoe also testified that his five-month-old daughter was currently in his parents' custody during the pendency of an investigation by the Texas Department of Family and Protective Services

---

[3]The offense occurred in 2011.

(DFPS).  As part of that investigation, Briscoe is prohibited from seeing his daughter, which he stated he would comply with.  Briscoe and his mother affirmed that he could and would comply with any imposed bail conditions.  *See, e.g.*, *id.* arts. 17.41, 17.43–.44, 17.49 (West 2015).  They both also testified that Briscoe would have reliable transportation to any court dates.

In opposing any reduction in the bail amount, the State primarily relied on the nature of the offense for which Briscoe was arrested.[4]  Briscoe argued that factors other than the nature of the offense required a reduction in the bail amount and pleaded for bail to be set at $10,000, an amount at which Briscoe had testified he could pay a bond for the surety's required percentage.  The trial court denied Briscoe's application.  Briscoe then filed this appeal, and we requested briefing.  *See* Tex. R. App. P. 31.1.

## II.  STANDARD OF REVIEW

Setting bail is committed to a trial court's discretion, but that discretion is governed by the constitution and the code of criminal procedure.  *See* U.S. Const. amend. VIII; Tex. Const. art. I, §§ 11, 13; Tex. Code Crim. Proc. Ann. art. 17.15 (West 2015).  The trial court must strike a balance between the defendant's presumed innocence and the State's interest in assuring the defendant's appearance at trial.  *See Ex parte Beard*, 92 S.W.3d 566, 573 (Tex.

---

[4]At the time of the hearing, Briscoe had not been indicted for the offense. Although unindicted, Briscoe seemed to concede that the offense for which he was arrested was a first-degree felony.  *See* Tex. Penal Code Ann. § 22.04(e) (dictating punishment level for offense based on mens rea).

App.—Austin 2002, pet. ref'd). Excessive bail, which is constitutionally prohibited, is bail that is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Id.*; *see* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. In exercising its discretion to set bail that is not constitutionally excessive, a trial court must consider several statutory factors:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. The trial court may also consider the accused's work record, his family and community ties, his length of residency, his prior criminal record, his conformity with previous bond conditions, the existence of any other bonds outstanding, and any aggravating circumstances alleged to have been involved in the charged offense. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel. Op.] 1981) *Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). But the primary purpose of an appearance bond is to secure the presence of the defendant in

5

court for the trial of the offense charged. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

In our review of the trial court's discretionary ruling, we must decide whether the trial court acted without reference to any guiding rules or principles— whether the act was arbitrary or unreasonable. *See Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pets. ref'd). We may not disturb a trial court's ruling that is within the zone of reasonable disagreement. *See Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). To that end, the applicant bears the burden of proof of showing that the trial court's bail decision was an abuse of its discretion and, thus, is reversible. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Scott*, 122 S.W.3d 866, 868–69 (Tex. App.—Fort Worth 2003, no pet.).

## III. DISCUSSION

We recognize that any review of a bail determination is, by nature, imprecise, but we again are guided by article 17.15. *See Ex parte Pemberton*, 577 S.W.2d 266, 267 (Tex. Crim. App. [Panel Op.] 1979); *Esquivel v. State*, 922 S.W.2d 601, 602 (Tex. App.—San Antonio 1996, no pet.).

### A. STATUTORY FACTORS

#### 1. Assure Appearance Without
#### Oppression (First, Second, and Fourth Factors)

The primary consideration in setting a bail amount and the first listed factor in article 17.15 is the reasonable assurance that the applicant will appear for

court. *See Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.); 41 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice & Procedure* § 21:25 (3d ed. 2011). Briscoe testified that he would be working and staying in Wichita County if released, would have reliable transportation to any court appearances, and was willing to pay for electronic monitoring as a bail condition. Briscoe stated that he would surrender his passport if required as a condition of bail. Briscoe's mother affirmed that she would ensure Briscoe appeared for court and that he could comply with any conditions that would ensure his appearance. Based on these facts, this factor indicates a reduction in bail was appropriate. *Cf. In re Durst*, 148 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (op. on reh'g) (considering conditions imposed by the trial court to ensure defendant's appearance and reducing bail to $150,000 for each of three third-degree felonies charged).

Next, bail cannot oppress. *See Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980) ("While bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, the power to require bail should not be used as an instrument of oppression."). Briscoe and his mother testified that neither had the assets to satisfy a $1,000,000 bail bond. As one court has noted:

> At the $360,000 level [for the second-degree felony of theft], bail is oppressive unless justified by unusual circumstances. Such an amount totally displaces the presumption of innocence and replaces it with a guaranteed trial appearance assured by incarceration without trial. It is not the purpose of bail, however, to "guarantee" a

7

defendant's appearance at trial. That cannot be done except by abolishing the right to bail.

*Bogia*, 56 S.W.3d at 840. This factor shows that bail in the amount set is oppressive.

Similar to whether the bail amount is oppressive, the fourth factor listed in article 17.15 mandates consideration of an applicant's ability to make bail, which is relevant but not controlling. *See Ex parte Sabur-Smith*, 73 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.). As we just recited, a bail that cannot be satisfied has the potential to displace the presumption of innocence. *See also Ex parte Melartin*, No. 14-14-00926-CR, 2015 WL 1544805, at *6 (Tex. App.—Houston [14th Dist.] Apr. 2, 2015, no pet.) (citing *Bogia*, 56 S.W.3d at 840). The record is clear that neither Briscoe nor his family can satisfy a $1,000,000 bail bond. Briscoe has no real or personal property that he could sell to pay the required percentage. "[T]he less resources he has, the more likely it will be that a lower amount will create a sufficient incentive to appear." 41 Dix & Schmolesky, *supra*, at § 21:27. Briscoe testified that he could satisfy a bail of $10,000. This factor weighs in favor of reduced bail.

## 2. Nature of the Offense (Third Factor)

Third, we consider the nature of the offense and the circumstances under which it was committed. As the State argued to the trial court, the facts recited in the arrest-warrant affidavit and the admitted autopsy report are disturbing and show that the child died as a result of blunt-force trauma while in Briscoe's care.

8

If convicted of intentionally or knowingly committing injury to a child causing death, Briscoe faces a punishment range of five to ninety-nine years' confinement and a possible fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.32 (West 2011). Briscoe's statement to the police was inconsistent with the facts of the child's injuries. The severity of the offense justified a high bail amount.

As part of a review of the nature of the offense, courts generally compare bail amounts in other cases involving offenses of the same degree. *See Rodriguez*, 595 S.W.2d at 550; *Ex parte Piceno*, No. 02-13-00421-CR, 2014 WL 2611191, at *4 (Tex. App.—Fort Worth June 12, 2014, no pet.) (mem. op., not designated for publication); *Maldonado*, 999 S.W.2d at 95–96. Relatively recent cases involving non-theft, non-drug,[5] and first-degree felonies have approved bail in amounts ranging from $50,000 to $1,000,000. *See, e.g.*, *Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991) ($50,000 for murder); *Ex parte Ragston*, 422 S.W.3d 904, 908–09 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ($250,000 for capital murder and murder); *Ex parte Green*, No. 02-13-

---

[5]We excluded first-degree theft and drug cases because bail determinations in those cases partially are based on the value of the property stolen or the street value of the drugs possessed. *See, e.g.*, *Ex parte Goodson*, No. 01-15-00288-CR, 2015 WL 1868771, at *3 (Tex. App.—Houston [14th Dist.] Apr. 21, 2015, no pet.) (mem. op., not designated for publication) (collecting cases); *cf. Ex parte Brooks*, 376 S.W.3d 222, 226 (Tex. App.—Fort Worth 2012, pet. ref'd) (Gabriel, J., dissenting) (opining that cases involving factually dissimilar offenses are unpersuasive in determining appropriateness of bail amount).

00474-CR, 2014 WL 584960, at *1 (Tex. App.—Fort Worth Feb. 13, 2014, no pet.) (mem. op., not designated for publication) ($1,000,000 for murder); *Lewis v. State*, Nos. 01-12-00886-CR, 01-12-00887-CR, 2013 WL 177416, at *4 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013, no pet.) (mem. op., not designated for publication) ($175,000 bail for two counts of injury to a child causing death); *Ex parte Guerra*, 383 S.W.3d 229, 234 (Tex. App.—San Antonio 2012, no pet.) ($950,000 for capital murder, aggravated robbery, and unauthorized use of a vehicle); *Ex parte Overstreet*, No. 2-08-404-CR, 2009 WL 2196133, at *3–4 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op., not designated for publication) ($500,000 for capital murder in the course of committing aggravated sexual assault); *Smithwick v. State*, 880 S.W.2d 510, 511 (Tex. App.—San Antonio 1994, no pet.) ($100,000 for murder and injury to a child). Although these cases are instructive as to an appropriate amount of bail in this case, the courts necessarily considered the factors in article 17.15 and the other permissible considerations in approving these bail amounts. In other words, ranges approved by other courts cannot be viewed in isolation but must be seen as merely one tool of many used in deciding whether the trial court abused its discretion. In any event, the nature-of-the-offense factor indicates that $1,000,000 was at the upper end of the range of approved amounts for offenses of similar severity.

10

### 3. Safety (Fifth Factor)

Finally, we consider the future safety of the community. Briscoe has no prior felony convictions. Although he has one child, he cannot have contact with this child, and he testified he would abide by that. Briscoe's mother, who has temporary custody of the child, stated that she would not allow Briscoe in her home to comply with this temporary-custody condition. This factor, while difficult to assay, shows that the high amount of Briscoe's bail is not sufficiently related to community safety. *See* 41 Dix & Schmolesky, *supra*, § 21:29.

### B. OTHER CONSIDERATIONS

Finally, we look to other, relevant considerations. Briscoe, who is twenty-nine, has lived in Wichita County for twenty-five years. The majority of his family, including his parents, lives in Wichita County. Although unemployed when he was arrested, Briscoe has a college degree and has a job in Wichita County waiting for him when he is released. Briscoe was previously convicted of misdemeanor driving while intoxicated. Briscoe had never previously been arrested for a felony. Although the State tried to argue that Briscoe had been uncooperative with the DFPS investigation leading to his daughter's placement with his parents, Briscoe testified that he merely exercised his right to speak with an attorney before discussing the case with DFPS. These considerations show that although Briscoe was arrested for a serious felony, he has "an incentive to remain despite the possibility of conviction and sentence." *Id.* § 21:30. We note

also that at the time of the hearing on Briscoe's application, which was seventeen days after his arrest, Briscoe had not been indicted.

### III. CONCLUSION

After our review of the relevant factors, we conclude that the $1,000,000 bail was excessive and that the trial court abused its discretion by failing to reduce that amount based on the evidence before it. *See* Tex. Code Crim. Proc. Ann. art. 11.24 ("If the proof sustains the petition, it will entitle the party to . . . have the bail reduced."). Although the circumstances and nature of the offense were severe, the remaining factors reveal that the bail was more excessive than necessary to ensure Briscoe's appearance. Therefore, we reverse the trial court's order denying habeas relief and remand this case to the trial court to set a reasonable bail; to determine what conditions, if any, should be imposed; and to allow the State and Briscoe to present any additional evidence or argument that the trial court deems relevant to each of the factors discussed above. *See* Tex. R. App. P. 31.3; *Brooks*, 376 S.W.3d at 224.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 8, 2015

12